## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JOSEPH N.,[1]

      Plaintiff,

           v.

FRANK BISIGNANO,[2]
Commissioner of Social Security,

      Defendant.

**Case No. 2:24-cv-0268**
**Magistrate Judge Norah McCann King**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act,

as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Joseph N. for Disability

Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff

appeals from the final decision of the Commissioner of Social Security denying that application.

After careful consideration of the entire record, including the entire administrative record, the

Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the

reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On April 6, 2020, Plaintiff protectively filed his application for benefits, alleging that he

has been disabled since November 1, 2018. R. 72–73, 157 –61. The application was denied

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of
the United States has recommended that, due to significant privacy concerns in social security
cases, federal courts should refer to plaintiffs in such cases by only their first names and last
initials. *See also* D.N.J. Standing Order 2021-10.
[2] Frank Bisignano, the current Commissioner of Social Security, is substituted as Defendant in
his official capacity. *See* Fed. R. Civ. P. 25(d).

initially and upon reconsideration. R. 82–87, 91–95. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 96–97. ALJ Peter Lee held a hearing on February 2, 2022, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 38–60. In a decision dated June 28, 2022, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from November 1, 2018, Plaintiff's alleged disability onset date, through the date of that decision. R. 21–33. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on July 18, 2023. R. 6–12. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On January 17, 2024, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 3.[3] On April 1, 2024, the case was reassigned to the undersigned. ECF No. 9. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. § 405(g). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

> factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account

whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));

*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists

only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is

overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or

"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of

Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see

K.K.*, 2018 WL 1509091, at *4.  The ALJ's decision thus must be set aside if it "did not take into

account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp.

at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular

format in conducting [the] analysis," the decision must contain "sufficient development of the

record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d

501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.

2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an

expression of the evidence s/he considered which supports the result, but also some indication of

the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121

("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication

of the evidence which he rejects and [the] reason(s) for discounting such evidence.") (citing

*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a

comprehensive explanation for the rejection of evidence; in most cases, a sentence or short

paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981)  Absent

such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

## B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the

impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 56 years old on November 1, 2018, his alleged disability onset date. R. 31. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. R. 24.

At step two, the ALJ found that Plaintiff's depressive disorder; anxiety disorder; and post-traumatic stress disorder ("PTSD") were severe impairments. *Id*. The ALJ also found that Plaintiff's hypertension, hyperlipidemia, mild degenerative changes to the lumbar spine, and obesity were not severe impairments. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 24–26.

At step four, the ALJ found that Plaintiff had the RFC to perform medium work subject to various additional limitations. R. 26–32. The ALJ also found that this RFC permitted the performance of Plaintiff's past relevant work as a school crossing guard but did not permit the performance of his past relevant work as a lab technician. R. 30–31.

Alternatively, the ALJ proceeded to step five and, relying on the testimony of the vocational expert, found that a significant number of jobs (all medium exertional jobs at the SVP 2 skill level)–*i.e.*, approximately 68,000 jobs as a cart attendant; approximately 26,000 jobs as a lab equipment cleaner; and approximately 51,000 jobs as a cleaner II–existed in the national economy and could be performed by Plaintiff with this RFC. R. 31–32. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from November 1, 2018, his alleged disability onset date, through the date of the decision. R. 32.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Brief,* ECF No. 10. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief*, ECF No. 13.

## IV.    SUMMARY OF RELEVANT MEDICAL EVIDENCE

### A.    State Agency Reviewing Psychological Consultants

Leslie Williams, Ph.D., conducted an initial review of Plaintiff's medical record on behalf of the state agency on June 22, 2020. R. 61–71; *see also* R. 72 (reflecting Mr. Williams' credentials). According to Mr. Williams, the record documented the severe medically determinable impairments of depressive, bipolar and related disorders, as well as anxiety and obsessive-compulsive disorders. R. 66. In conducting the psychiatric review technique and considering the paragraph B criteria of Listings 12.04 (addressing depressive, bipolar and related disorders) and 12.06 (addressing anxiety and obsessive-compulsive disorders), Mr. Williams opined that Plaintiff was mildly limited in some areas of functioning, but was moderately limited in his ability to concentrate, persist, or maintain pace; to understand, remember and carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule; to maintain regular attendance and be punctual within customary tolerances; to complete a normal workday or week without interruptions from psychologically based symptoms and to perform at a consistent pace without unreasonable rest periods; and to respond appropriately to changes in the work setting. R. 66, 68–69. Under the heading "MRFC— Additional Explanation," Mr. Williams further explained her opinion as follows:

8

> Claimant is a 58-year-old male alleging depression and anxiety. He is in outpatient psych treatment TP MSE: Oriented x3, nonpsychotic, no SI/HI, cognitive functions moderately impaired. ADLs: Lives alone, does chores, cares for his pets, shops, uses computer, drives, handles money. Claimant is capable of understanding instructions and maintaining pace and persistence in simple, routine work.

R. 69.

Thomas Plahovinsak, Ph. D., reviewed Plaintiff's medical record upon reconsideration for the state agency on January 14, 2021. R. 74–81. Under heading the "MRFC—Additional Explanation," Mr. Plahovinsak agreed with Mr. Williams regarding Plaintiff's mental limitations:

> INITIAL: Claimant is a 58-year-old male alleging depression and anxiety. He is in outpatient psych treatment. TP MSE: Oriented x 3, nonpsychotic, no SI/HI, cognitive functions moderately impaired. ADLs: Lives alone, does chores, cares for his pets, shops, uses computer, drives, handles money. Claimant is capable of understanding instructions and maintaining pace and persistence in simple, routine work.
>
> *******
>
> RECON: RCDIB claim for a 58 yo male who at recon did not allege any new psych impairments or worsening of existing ones. Evidence from Mr. Agresti (7-2-20) indicated that the depression screening was not consistent w a major depressive episode.
>
> A review of the evidence from the initial determination along with updated MER obtained in the recon process reveals no significant objective evidence or overall significant change in the clmt's condition; accordingly, the same conclusion is reached as the PC PRT/MRFC by Mr. Williams dated 6-22-20 and is affirmed.

R. 79.

**B.    James Silvestri, D.C.S.W.**

On January 27, 2022, James Silvestri, D.C.S.W., completed a six-page, check-the-box, and fill-in-the blank "Mental Medical Source Statement." R. 302–07. Mr. Silvestri, who had conducted weekly counseling sessions with Plaintiff since January 2020, diagnosed panic attacks, depression, and PTSD. R. 302. Treatment consisted of weekly counseling sessions and

medication (Effexor and Ativan), with which Plaintiff was compliant. *Id.* Asked to describe the clinical findings that demonstrated the severity of Plaintiff's mental impairments and symptoms, Mr. Silvestri responded: "Severe anxiety [;] acute stress reaction[;] panic attacks[;] severe depression[;] difficulty concentrating + sleeping[;] mood fluctuations[;] fatigue[;] lack of motivation[;] PTSD ABP symptoms intensify under minimal stress. Poor probability of [illegible] exists[.]" *Id.* Mr. Silvestri identified the following signs and symptoms: anhedonia or pervasive loss of interest in almost all activities; appetite disturbance with weight change; decreased energy; generalized persistent anxiety; mood disturbance; difficulty thinking or concentrating; recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress; persistent disturbances of mood or affect; change in personality; apprehensive expectation; recurrent obsessions or compulsions which are a source of marked distress; emotional withdrawal or isolation; intense and unstable interpersonal relationships and impulsive and damaging behavior; perceptual or thinking disturbances; emotional lability; easy distractibility; memory impairment – short, intermediate or long term; sleep disturbance; and recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror, and sense of impending doom occurring on the average of at least once a week. R. 303. Mr. Silvestri described Plaintiff's ability to perform work-related activities on a day-to-day basis in a regular work setting, using the following scale: unlimited or very good; limited but satisfactory (meaning noticeable difficulty (*e.g.*, distracted from job activity) no more than 10 percent of the workday or work week); seriously limited (meaning noticeable difficulty (*e.g.*, distracted from job activity) from 11 to 20 percent of the workday or work week); unable to meet competitive standards (meaning noticeable difficulty (*e.g.*, distracted from job activity) from 21 to 40 percent of the workday or work week); and no useful ability to

function (an extreme limitation, meaning the claimant cannot perform this activity on a regular, reliable, and sustained schedule in a regular work setting). R. 304. According to Mr. Silvestri, Plaintiff had a limited but satisfactory ability to be aware of normal hazards and take appropriate precautions, and a seriously limited ability to remember work-like procedures, understand and remember very short and simple instructions, ask simple questions or request assistance, and accept instructions and respond appropriately to criticism from supervisors. *Id.* Plaintiff could not meet competitive standards in his ability to carry out very short and simple instructions and make simple work-related decisions and had no useful ability to function in the following areas: maintain attention for two-hour segment; maintain regular attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; and deal with normal work stress. *Id.* Asked to explain limitations in the three most limited categories (seriously limited; unable to meet competitive standards; and no useful ability to function) and to "include the medical/clinical findings that support this assessment[,]" Mr. Silvestri responded: "Self explanatory esp. symptoms intensify under even minimal stress[;] totally unable to work 8 hrs a day 5 days week on a sustained basis[.]" *Id.* Mr. Silvestri also opined that Plaintiff was seriously limited in his ability to understand and remember detailed instructions; was unable to meet competitive standards in his ability to carry out detailed instructions and set realistic goals or make plans independently of each other; and had no useful ability to deal with stress of

semiskilled and skilled work. R. 305. Asked to explain these limitations and to "include the medical/clinical findings that support this assessment [,]" Mr. Silvestri again responded: "Self explanatory. Symptoms intensify under even minimal stress [;] not able to work 8 hrs a day 5 days week on a sustained basis[.]" *Id*. Mr. Silvestri further opined that Plaintiff had a limited but satisfactory ability to adhere to basic standards of neatness and cleanliness; a seriously limited ability to interact appropriately with the public and maintain socially appropriate behavior; and no useful ability to travel in unfamiliar places or use public transportation. *Id*. Mr. Silvestri did not respond to the question asking him to explain his support for these limitations. *Id*. Mr. Silvestri denied that Plaintiff had a low IQ or reduced intellectual functioning and answered in the affirmative when asked if the psychiatric conditions exacerbate Plaintiff's experience of pain or other physical symptoms. *Id*. Asked what work demands Plaintiff finds stressful if stress tolerance is an issue, Mr. Silvestri checked boxes indicating the following: speed; precision; complexity; deadlines; working within a schedule; making decisions; exercising independent judgment; completing tasks; working with other people; dealing with public (strangers); dealing with supervisors; being criticized by supervisors; simply knowing that work is supervised; getting to work regularly; remaining at work a full day; fear of failure at work; little latitude for decision-making; lack of collaboration on the job; and no opportunity for learning new things. R. 306. Asked how often, on average, Plaintiff's impairments or treatment would cause him to be absent from work, Mr. Silvestri responded that Plaintiff "cannot work at all[.]" *Id*. Mr. Silvestri affirmed that Plaintiff's impairments had lasted or could be expected to last at least twelve months and that Plaintiff's impairments were reasonably consistent with the symptoms and functional limitations described in the evaluation. *Id*. According to Mr. Silvestri, Plaintiff would likely be off task 25% or more during a typical workday due to his symptoms interfering with the

12

attention and concentration needed to perform even simple work tasks. R. 307.

## V.    DISCUSSION

### A.    Opinion Evidence and the RFC

Plaintiff argues that the ALJ failed to properly consider the opinions of the state agency reviewing psychological consultants and Mr. Silvestri, resulting in a flawed RFC. *Plaintiff's Brief*, ECF No. 10, pp. 7–14, 19–23. For the reasons that follow, Plaintiff's arguments are not well taken.

A claimant's RFC is the most that the claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. § 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In addition, an ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of

judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[4] the Commissioner's regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).

---

[4] As previously noted, Plaintiff's claim was filed on April 6, 2020.

The applicable regulation emphasizes that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 404.1520c(a). As to the supportability factor, the regulation provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(1). As to the consistency factor, the regulation provides that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(2).

The applicable regulation further requires the ALJ to articulate his "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at § 404.1520c(b). As previously noted, "[s]upportability and consistency are the most important factors. . . . ALJs need not explain their determinations regarding the other factors, but they must discuss supportability and consistency." *Gongon v. Kijakazi*, 676 F. Supp. 3d 383, 394 (E.D. Pa. 2023) (citations omitted); *see also Stamm v. Kijakazi*, 577 F. Supp. 3d 358, 370 (M.D. Pa. 2021) ("Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors."). Finally, "a judge need

not reiterate the magic words 'support' and 'consistent' for each doctor" in order to satisfy the articulation requirements for the supportability and consistency factors, providing that the judge "weave[s] supportability and consistency throughout her analysis of which doctors were persuasive." *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024).

### A.    State Agency Reviewing Psychological Consultants

At step four of the sequential evaluation process, the ALJ determined that Plaintiff had the RFC to perform medium exertional work "except he can occasionally climb ropes, ladders or scaffolds; frequently stoop and crouch; frequently reach; he can have only occasional contact with supervisors, co-workers and the public; and he is able to do only simple and routine tasks." R. 26. In making this determination, the ALJ found, *inter alia*, the state agency reviewing psychological opinions generally persuasive, reasoning as follows:

> Although I will not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical findings or medical opinions, including those from your medical sources, I have fully considered all the medical opinions and prior administrative medical findings in this case. Regarding the opinions of DDS, they opined that the claimant did not have a severe physical impairment but opined that he did have severe mental impairments. DDS limited the claimant to understanding instructions and maintaining pace and persistence in simple, routine work (Exhibits 1A and 4A). Although I find the opinions of DDS to be *generally persuasive*, I do find that the *record evidence in its entirety is generally more consistent with additional restrictions as outlined in the above established residual functional capacity. I concur with DDS that the claimant's physical impairments do not severely and significantly impact his physical functioning.*[5] *I also concur with DDS that the claimant would be limited to simple and routine tasks but I further find that the overall record evidence is consistent with some social limitations* as established in the above residual functional capacity.

R. 30 (emphasis added).

---

[5] The state agency found that Plaintiff did not suffer from a severe physical impairment. R. 76. Plaintiff challenges neither this state agency finding nor the ALJ's findings regarding Plaintiff's physical impairments and related limitations. *Plaintiff's Brief*, ECF No. 10, p. 16 ("The ALJ provided reasons in the decision for physical portion of the RFC and the Plaintiff does not challenge that the physical impairments are non-severe.").

Plaintiff challenges the ALJ's consideration of these state agency psychological opinions, arguing that the ALJ "utterly failed to articulate how" he considered the consistency and supportability of these opinions. *Plaintiff's Brief*, ECF No. 10, pp. 9–11. Plaintiff also argues that the ALJ's persuasiveness evaluation was ambiguous: Despite the ALJ's finding that the state agency psychological opinions were "generally persuasive", the ALJ also found that the record warranted additional—otherwise unidentified—limitations. *Id*. at 9–10. According to Plaintiff, the ALJ "did not even mention supportability or consistency, let alone articulate how these factors were considered [,]" thus resulting in reversible error. *Id*. at 10–11.

The Court is not persuaded that this issue requires remand. The ALJ expressly acknowledged the governing regulation, 20 C.F.R. § 404.1520c, at step four before evaluating the opinion evidence. R. 26–27. As to consistency, and as detailed above, the ALJ characterized the state agency opinions as generally persuasive, but further found that the evidence was more consistent with additional limitations which, to Plaintiff's benefit, the ALJ included in the RFC. R. 26, 30. For example, the ALJ found that the record evidence was also "consistent with some social limitations as established in the above residual functional capacity." R. 26 (limiting Plaintiff to, *inter alia*, "only occasional contact with supervisors, co-workers and the public"), 30.[6] The ALJ's consideration of the consistency of the state agency opinions was sufficient under the applicable regulation to permit judicial review. *See* 20 C.F.R. § 404.1520c(c)(2).

Although the ALJ did not expressly use the word "supportability" when analyzing the state agency opinions, R. 30, he was not required to do so. *See Zaborowski*, 115 F.4th at 639;

---

[6] The ALJ also agreed with the state agency that Plaintiff's physical impairments do not severely and significantly impact Plaintiff's physical functioning, but nevertheless found that the record was more consistent with an additional limitation restricting Plaintiff to medium exertional work, rather than heavy work. R. 26, 30, 70, 76, 80.

*Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) ("The ALJ, of course, need not

employ particular 'magic' words: '*Burnett* does not require the ALJ to use particular language or

adhere to a particular format in conducting his analysis.'") (quoting *Jones v. Barnhart*, 364 F.3d

501, 505 (3d Cir. 2004)). A fair reading of the ALJ's decision makes clear that the ALJ

implicitly found that the state agency consultants' opinions were supported by their specific

findings in the MRFC explanation regarding Plaintiff's unremarkable mental status examinations

(oriented x3, nonpsychotic, with no suicidal or homicidal ideations) and moderate impairment in

cognitive functions and activities of daily living (chores, caring for pets, shopping, using

computer, driving, and handling money). These findings supported the state agency consultants'

opinions that Plaintiff was capable of understanding instructions and maintaining pace and

persistence for simple, routine work, which limitation the ALJ ultimately included in the RFC. R.

26, 30, 69, 79. Under these circumstances, this Court is persuaded that the ALJ sufficiently

considered the supportability of the state agency opinions in accordance with the applicable

regulation. *See* 20 C.F.R. § 404.1520c(c)(1); *Zaborowski*, 115 F.4th at 639.

Plaintiff also complains that the state agency consultants were inconsistent in their

findings that Plaintiff had a mild limitation in his ability to respond appropriately to changes in

the work setting when considering the paragraph B criteria, yet also had a moderate limitation in

adapting and managing himself. *Plaintiff's Brief*, ECF No. 10, pp. 10–11 (citing R. 66, 68–69,

77, 79). Plaintiff argues that the ALJ committed "reversible error" when he failed to address this

internal inconsistency.

Plaintiff's argument is not well taken. As an initial matter, paragraph B criteria findings

do not require any particular conclusions or restrictions in the RFC. *Cf. Hess v. Comm'r Soc.

Sec.*, 931 F.3d 198, 209 (3d Cir. 2019) (explaining that "no incantations are required at steps four

and five simply because a particular finding has been made at steps two and three. Those portions of the disability analysis serve distinct purposes and may be expressed in different ways" and, therefore, "the findings at steps two and three will not necessarily translate to the language used at steps four and five"). Moreover, as the Commissioner explains, *Defendant's Brief*, ECF No. 13, pp. 15–16, Plaintiff's argument also rests on a misunderstanding of the state agency consultants' opinions: Plaintiff confuses the worksheet portion of the state agency opinions (which contains questions related to a claimant's functional limitations and in which the moderate limitation in the ability to respond appropriately to changes in the work setting appeared), with the narrative portion of those opinions (which appeared under the heading "MRFC – Additional Explanation"). R. 69, 79. Notably, the worksheet is not the operative portion of those opinions, *i.e.*, it is not the RFC. *See Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 636 (3d Cir. 2010) ("'Section I is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and *does not constitute the RFC assessment*.'") (emphasis in the original) (quoting POMS DI 24510.060, *available at* https://secure.ssa.gov/apps10/porns.nsf/lnx/0424510060); R. 68 ("The questions below help determine the individual's ability to perform sustained work activities. *However, the actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion*. This discussion(s) is documented in the explanatory text boxes following each category of limitation (i.e., understanding and memory, sustained concentration and persistence, social interaction and adaptation). Any other assessment information deemed appropriate may be recorded in the MRFC - Additional Explanation text box.") (emphasis added), 78 (same); *cf. Wise v. Comm'r of Soc. Sec.*, 626 F. App'x 357, 360 (3d Cir. 2015) ("But we have said that ALJs are not required to give any weight to these fill-in-the-

19

blank and checklist portions of RFC assessments and that their focus instead should be on the narrative portions of the assessments where the medical experts expound on their opinions.") (citations omitted). The ALJ therefore had no obligation to reconcile any alleged inconsistency between the actual MRFC in the narrative section and the moderate limitation in responding appropriately in the work setting contained in the worksheet. *Id.*

Plaintiff's insistence that the ALJ erred in not accommodating in the RFC this moderate limitation as well as other moderate limitations appearing in the worksheet is similarly unavailing. *Plaintiff's Brief*, ECF No. 10, pp. 11–14 (citing, *inter alia*, *Jacques M. v. Kijakazi*, 2022 WL 2358390 (D.N.J., June 30, 2022)). In finding moderate limitations in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to complete normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and to respond appropriately to changes in the work setting, Drs. Williams and Plahovinsak expressly referenced their narrative discussions under the heading, "MRFC – Additional Explanation." R. 68–69, 79 (referring to "see below" when asked to explain in narrative form the limitations in concentration and persistence and in adaptation). In that narrative explanation, as detailed above, the state agency reviewing consultants found that Plaintiff was "capable of understanding instructions and maintaining pace and persistence in simple, routine work." R. 69, 79. Stated differently, Drs. Williams and Plahovinsak detailed and explained in the narrative discussion the parameters of Plaintiff's mental functional limitations. *See id.*[7] The ALJ accommodated this limitation by restricting Plaintiff to the

---

[7] Accordingly, the MRFC narrative explanation regarding Plaintiff's moderate mental limitations and abilities in the present case is distinguishable from *Jacques M.*, which expressly referred to

performance of "only simple and routine tasks." R. 26; *cf. Hess*, 931 F.3d at 210 ("A limitation to 'simple tasks' is fundamentally the same as a limitation 'to jobs requiring understanding, remembering, and carrying out only simple instructions and making only simple work-related decisions[.]'") (citations omitted); *Menkes v. Astrue*, 262 F. App'x 410, 412–13 (3d Cir. 2008) ("The term 'simple routine tasks,' in the context of the disability proceedings, generally refers to the non-exertional or mental aspects of work. For example, performing a 'simple routine task' typically involves low stress level work that does not require maintaining sustained concentration.").

For these reasons, this Court concludes that substantial evidence supports the ALJ's consideration of the opinions of the reviewing state agency psychological consultants and the mental RFC.

### B.    James Silvestri, D.C.S.W.

In crafting the RFC, the ALJ also considered—and rejected—the January 27, 2022, opinion of Mr. Silvestri:

> As for the mental medical source statement contained in Exhibit 6F, I do not find this opinion to be persuasive. Dr. Silvestri opined that the claimant had no useful ability to function in many mental domains and opined that he would be off-task 25% or more of the time. *I find this opinion to be extreme and to be unsupported by the claimant's treatment notes as well as inconsistent with the entire evidence of record.* Moreover, *even though Dr. Silvestri indicates that he has weekly counseling session with the claimant, the record fails* [sic] *to contain a dearth of treatment notes to support his extreme and overly restricted opinion.*

R. 30 (emphasis added). Plaintiff challenges the ALJ's analysis in this regard, arguing that the ALJ failed to properly consider the supportability and consistency of this opinion. *Plaintiff's Brief*, ECF No. 10, pp. 19–23. The ALJ first erred, Plaintiff argues, in his consideration of the

---

the limitations identified in the worksheet. *See Jacques M.* 2022 WL 2358390, at *7 (directing in the MRFC narrative to "[s]ee PRT for rationale").

supportability of this opinion because the ALJ compared this opinion to treatment notes and therefore "effectively performed a consistency analysis not a supportability analysis. This was error." *Id*. at 21.

Plaintiff's argument is not well taken. "'[S]upportability relates to the extent to which a medical source has articulated support for the medical source's own opinion[.]'" *Regina V. v. Bisignano*, No. 2:24-CV-01661-RAL, 2025 WL 2772624, at *7 (W.D. Pa. Sept. 26, 2025) (W.D. Pa. Jan. 25, 2023) (quoting *Cook v. Comm'r of Soc. Sec.*, No. 6:20-CV-1197, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021)); *see also Snyder v. Kijakazi*, No. 3:21-CV-00532, 2022 WL 2734410, at *6–7 (M.D. Pa. May 5, 2022), *report and recommendation adopted*, No. CV 3:21-532, 2022 WL 2304684 (M.D. Pa. June 27, 2022) (finding that the ALJ's evaluation of a medical opinion "comported" with the applicable regulations where, as to supportability, the ALJ found, *inter alia*, that e opinion is unsupported by [that physician's] treatment notes"). In this case, before the ALJ considered the opinion evidence, he detailed Mr. Silvestri's treatment notes:

> Regarding the claimant's mental impairments, treatment records from social worker James Silvestri document that the claimant started services in November 2017 and was continuing treatment till September 2020. The claimant was noted to be maintained on psychotropic medication for his diagnosed depression, anxiety, and PTSD. The claimant was noted to be making slow progress in that the claimant did report memory lapses and losing things. His symptoms were noted to include severe anxiety with panic attacks and severe depression with difficulty concentrating, mood fluctuation, fatigue, and lack of motivation. The claimant's symptoms were also noted to intensify with the death of his longtime partner and also the recent death of his mother which resulted in PTSD and social phobia. The claimant was noted to be engaged in weekly counseling (Exhibit 3F [R. 281–82 (reflecting treatment dates of May 12, 2020; June 2020; September 16, 2020]).

R. 29. The ALJ explained that these treatment notes—characterized by the ALJ as a "dearth" despite Mr. Silvestri's representation that he had treated Plaintiff on a weekly basis for a number of years—did not support that provider's "extreme and overly restricted" opinion. R. 30. As the

ALJ observed, the small number of treatment notes, which were dated more than a year before the opinion was rendered and which referred to Plaintiff's "slow progress" and reaction to two recent deaths, failed to support the provider's opinion that Plaintiff had, *inter alia*, "no useful ability to function" in multiple areas necessary to the performance of unskilled work and that Plaintiff would be off task 25% or more of the time. R. 29–30, 304–05, 307. Based on this record, the Court cannot say that the ALJ erred in considering the supportability of Mr. Silvestri's extreme opinion. *See* 20 C.F.R. § 404.1520c(c)(1); *Regina V.*, 2025 WL 2772624, at *7; *Breazeale v. Kijakazi*, No. 1:20-CV-2184, 2022 WL 883852, at *12 (M.D. Pa. Mar. 24, 2022) ("This discrepancy between the treating source opinion and that source's treatment records was a valid consideration for the ALJ to take into account when assessing the persuasive power of these medical opinions . . . and substantial evidence supported the ALJ's finding that CRNP Maritato's treatment notes did not describe Breazeale's symptoms with the degree of severity set forth in her medical opinions.").

Plaintiff further argues that the ALJ's consistency analysis was also "insufficient because the ALJ simply made a conclusory statement that this opinion is not consistent with the entire evidence of record." *Plaintiff's Brief*, ECF No. 10, p. 21. Again, however, Plaintiff appears to confuse the Regulation's notions of supportability and consistency. As explained above, the ALJ properly relied on Mr. Silvestri's notes when finding that this provider's opinion was unsupported. In contrast, the factor of "consistency relates to the relationship between a medical source's opinion and other evidence within the record." *Regina V.*, 2025 WL 2772624, at *7 (internal quotation marks and citations omitted). In this case, although the ALJ generally referred to "the entire evidence of record [,]" R. 30, the Court finds, based on the particular record in this case, that the ALJ's decision provides sufficient discussion for judicial review.

23

This Court has already explained that substantial evidence supports the ALJ's finding persuasive the state agency opinions that Plaintiff could perform simple, routine work. R. 30, 69, 79. It is clear that Mr. Silvestri's "extreme and overly restricted opinion" is inconsistent with these state agency opinions. In addition, the ALJ detailed, *inter alia*, Plaintiff's counseling notes from Care Plus:

> The claimant was also noted to be engaged in counseling with Care Plus clinical outpatient since November 2021 and the claimant was noted to be very consistent with attendance and actively engaged in his weekly sessions. His counselor noted that the claimant continued to report severe fatigue and continued to struggle with stress tolerance and his daily living. The claimant also reported that he continued to lack interpersonal engagement (Exhibit 7F [R. 308]).

R. 29; *see also* Exhibit 7F, R. 308 (containing a letter dated January 27, 2022, addressed "To Whom It May Concern" and signed by George Askins, MA, LAC, NCC and Cory Specher, LPC); *see also Serrano v. Kijakazi*, No. CV 20-3985, 2021 WL 4477137, at *3–4 (E.D. Pa. Sept. 30, 2021) ("In this case, the ALJ discussed and analyzed the evidence extensively before determining the persuasiveness of the medical opinions. . . . The ALJ was not required to repeat this information for the sake of elaborating on her findings of persuasiveness."). A fair reading of this record reflects that the ALJ reasonably found that Mr. Silvestri's extreme opinion was inconsistent with these counseling notes. Plaintiff was found to be very consistent with attendance and actively engaged in his weekly sessions. Although Plaintiff had reported severe fatigue, struggles with stress tolerance, and lack interpersonal engagement, the mere memorialization of a claimant's subjective complaints in a medical record does not transform those complaints into objective findings or a medical opinion. *See Hatton v. Comm'r of Soc. Sec. Admin*., 131 F. App'x 877, 879 (3d Cir. 2005) ("[A] medical source does not transform the claimant's subjective complaints into objective findings simply by recording them in his narrative report[.]") (summarizing *Craig v. Chater*, 76 F.3d 585, 590 n. 2 (4th Cir. 1996));

24

*Morris v. Barnhart*, 78 F. App'x 820, 824–25 (3d Cir. 2003) ("[T]he mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion.") (citations omitted); *Famularo v. Comm'r of Soc. Sec.*, No. CV 20-1655, 2021 WL 613832, at *7 (D.N.J. Feb. 17, 2021) ("[A] a claimant's own subjective report about her symptoms[] does not become a medical opinion by virtue of being recorded in treatment notes.") (citations omitted). As discussed in more detail below, the ALJ properly discounted the intensity, persistence, and limiting effects of these subjective symptoms. In short, the Court is not persuaded that the ALJ failed to consider the consistency of Mr. Silvestri's opinion in accordance with the applicable regulations. Accordingly, this issue will not serve as a basis to remand this action.

### B.    Subjective Statements

Plaintiff also challenges the ALJ's consideration and evaluation of Plaintiff's subjective complaints. "Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)).  Instead, objective medical evidence must corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)).  Specifically, an ALJ must follow a two-step process in evaluating a claimant's subjective complaints. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id*. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the

symptoms limit an individual's ability to perform work-related activities[.]" *Id.*; *see also*

*Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and

persistence of the pain or symptom and the extent to which it affects the ability to work]

obviously requires the ALJ to determine the extent to which a claimant is accurately stating the

degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. §

404.1529(c)). In conducting this evaluation, an ALJ must consider the objective medical

evidence as well as other evidence relevant to a claimant's subjective symptoms. 20 C.F.R. §

404.1529(c)(3) (listing the following factors to consider: daily activities; the location, duration,

frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the

type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate

pain or other symptoms; treatment, other than medication, currently received or have received

for relief of pain or other symptoms; any measures currently used or have used to relieve pain or

other symptoms; and other factors concerning your functional limitations and restrictions due to

pain or other symptoms). Finally, an "ALJ has wide discretion to weigh the claimant's subjective

complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them

where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134

(citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d

Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as

there is a sufficient basis for the ALJ's decision to discredit a witness.").

  Here, the ALJ followed this two-step evaluation process. The ALJ specifically considered

Plaintiff's subjective complaints. R. 26–28. The ALJ found that Plaintiff's medically

determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's

statements "concerning the intensity, persistence and limiting effects of these symptoms are not

entirely consistent with the medical evidence and other evidence in the record for the reasons

explained in this decision." R. 28. The ALJ expressly considered Plaintiff's function report in

which he stated, *inter alia*, that he had left his prior three jobs because of nervousness, panic and

anxiety, but that he was able to care for his dogs (take them outside, shop for them, feed them,

and bathe them); prepare meals such as salads and frozen dinners; grocery shop; handle money;

that he spent more time alone than he had in the past; that he could pay bills, count change,

handle a savings account, and use a checkbook; and that he watches television, reads, and prays

daily. R. 27. He also reported that sometimes he handled stress well, but that at other times he

did not. *Id*. At the hearing, Plaintiff testified, *inter alia*, that "he cannot work due to severe panic

attacks and deep depression which causes him to be unable to function" and that his "mental

illness makes him totally incapacitated"; that sometimes medications help his condition; that he

talks to a therapist once a week by phone and that having someone to talk to makes him feel

better; and that he struggles to focus. R. 28.

     As detailed above, however, the ALJ found generally persuasive the opinions of the state

agency psychological consultants that Plaintiff could understand instructions and maintain pace

and persistence in simple, routine work. R. 30, 61–71, 74–81. Moreover, activities such as

paying bills, handling a checking and savings account, reading, and watching television, R. 27,

69, 79, require and reflect an ability to concentrate. *See Millner v. Comm'r of Soc. Sec*., No.

2:18-CV-13473 (SDW), 2019 WL 3369781, at *6 (D.N.J. July 25, 2019) ("Plaintiff reported

completing many daily tasks that require some concentration, persistence and pace, such as

watching television and reading for pleasure."); *Kinzey v. Colvin*, No. CV 16-5435, 2019 WL

1236684, at *4 (E.D. Pa. Mar. 18, 2019) (affirming ALJ's decision where the ALJ found the

claimant's daily life activities, including, *inter alia*, "paying bills, handling his finances,

engaging in reading as a hobby," undermined the claimant's credibility, including an alleged "inability to concentrate, and difficulty focusing"); *Dorkoski v. Colvin*, No. 3:14-CV-1198, 2015 WL 4409616, at *26 (M.D. Pa. July 16, 2015) (finding that "the ALJ correctly noted that Plaintiff's activities of daily living discredited his account of the severity of his symptoms[,]" including, "[i]n terms of concentration, Plaintiff was able to pay bills, count change, handle a savings account, use a checkbook, and use a computer"). In this case, it is clear that the ALJ implicitly found that Plaintiff's daily activities and well-supported state agency psychological opinions were inconsistent with and belied Plaintiff's subjective statements that, *inter alia*, he was "totally incapacitated" by his mental impairments. In the view of this Court, this record provides substantial support for the ALJ's decision to discount Plaintiff's subjective statements as inconsistent with the record evidence. *See* SSR 16-3p; *Van Horn*, 717 F.2d at 873; *Miller*, 719 F. App'x at 134; *Hoyman v. Colvin*, 606 F. App'x 678, 681 (3d Cir. 2015) ("The evidence from [the claimant's] doctors and the evidence regarding his daily activities . . . support the ALJ's finding with respect to [the claimant's] credibility."); *Cunningham v. Comm'r of Soc. Sec.*, 507 F. App'x 111, 118 (3d Cir. 2012) ("[I]t is appropriate for an ALJ to consider the number and type of activities in which a claimant engages when assessing his or her residual functional capacity. . . and was permitted to consider them to evaluate the credibility of [the claimant's] subjective complaints of pain and other symptoms.") (citations omitted); *Izzo*, 186 F. App'x at 286. In any event, the ALJ did not completely discount Plaintiff's subjective complaints. Rather, the ALJ's RFC analysis confirms that he took into consideration Plaintiff's complaints of social phobia and lack of interpersonal engagement. R. 26–27, 29.

For all these reasons, the Court concludes that the ALJ sufficiently explained his reasoning in assessing Plaintiff's subjective complaints, and the ALJ's findings in this regard are

supported by substantial evidence in the record. They are therefore entitled to this Court's

deference. *See* SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec.*, 306

F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony

regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn v.*

*Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)). Accordingly, the ALJ's assessment of Plaintiff's

subjective complaints cannot serve as a basis for remand of this action. *Id.*

## VI.    CONCLUSION

For all these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42

U.S.C. § 405(g).


Date:  December 16, 2025            _____*s/Norah McCann King*_____
                                   NORAH McCANN KING
                                   UNITED STATES MAGISTRATE JUDGE